## IN THE U.S. DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OHIO
## CIVIL DIVISION

| | | |
|---|---|---|
| **JIBAU W. HARVEY** | ) | **Civil Action No:** |
| **33 W. Lowell** | ) | |
| **Akron, Ohio 44310** | ) | **Judge:** |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **PARTSSOURCE, INC.** | ) | |
| **777 Lena Drive** | ) | |
| **Aurora, Ohio 44202** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **JEFFREY DALTON, individually and** | ) | |
| **in his official capacity at PartsSource, Inc.** | ) | |
| **777 Lena Drive** | ) | |
| **Aurora, Ohio 44202** | ) | |
| | ) | **COMPLAINT** |
| **and** | ) | |
| | ) | |
| **DONALD HUBBARD, individually and** | ) | **JURY TRIAL DEMAND** |
| **in his official capacity at PartsSource, Inc.** | ) | |
| **777 Lena Drive** | ) | |
| **Aurora, Ohio 44202** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **NANCY SWISHER, individually and** | ) | |
| **in her official capacity at PartsSource, Inc.** | ) | |
| **777 Lena Drive** | ) | |
| **Aurora, Ohio 44202** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **ABC Company** | ) | |
| **Address Unknown** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **John Doe and/or Jane Doe** | ) | |
| **Address unknown** | ) | |
| | ) | |
| **Defendants** | ) | |

Now comes Plaintiff, Jibau Harvey, (hereinafter "Plaintiff"), by and through the undersigned attorney, and proceeding under all appropriate Federal Rules, here brings action against the Defendants named, for damages sustained by the Plaintiff due to unlawful, negligent or deliberate conduct by one, some, or all Defendants, and he states:

## Parties

1. Plaintiff, Jibau W. Harvey, (hereinafter "Harvey" or "Employee" or "Plaintiff"), is an individual who is a citizen of the State of Ohio.

2. Defendant, PartsSource, Inc., (hereinafter "PartsSource" or "Employer" or "Company" or "Defendant"), is a corporation, organized under the laws of the State of Delaware, licensed to do business in the State of Ohio.  Defendant has its principal place of business in the State of Ohio.  Defendant may be served with process by serving its registered agent, Acfb Incorporated at 200 Public Square, Ste. 2300, Cleveland, Ohio 44114.

3. Defendant, Jeffrey Dalton, (hereinafter "Jeff  Dalton" or "J. Dalton"), is an individual and employee and/or principal of PartsSource, Inc.  Defendant is a citizen of the State of Ohio.  Defendant may be served with process at 777 Lena Drive, Aurora, Ohio 44202.

4. Defendant, Donald Hubbard, (hereinafter "Hubbard" or "Don Hubbard"),is an individual and employee and/or principal of PartsSource, Inc.  Defendant is a citizen of the State of Ohio.  Defendant may be served with process at 777 Lena Drive, Aurora, Ohio 44202.

5. Defendant, Nancy Swisher, (hereinafter "Swisher"), is an individual and employee of PartsSource, Inc.  Defendant is a citizen of the State of Ohio.  Defendant may be served with process at 777 Lena Drive, Aurora, Ohio 44202.

6. ABC Company, is a company which is unknown to the Plaintiff at this time, who may prove to later be a necessary part of this action.

2

7.   John Doe and/or Jane Doe are individuals who are unknown to the Plaintiff at this time, who may prove to later be necessary parties of this action.

8.   All Defendants named herein individual and jointly are collectively referred to as "Defendants".

### Jurisdiction and Venue

9.   Jurisdiction of this Court is invoked under Federal Question jurisdiction provided under 28 U.S.C. § 1331, in that Plaintiff's Complaint asserts a violation of Title VII of Civil Rights Act of 1964, § 701 *et seq.* as amended, 42 U.S.C. § 2000e. *et seq.* Jurisdiction of this Court is also invoked under Supplemental Jurisdiction under 28 U.S.C. § 1367, in that Plaintiff's state claims are so related to his  42 U.S.C. § 2000e claims that they form part of the same case and/or controversy under Article 3 of the U.S. Constitution.

10.   Venue is in this Court under 28 U.S.C. § 1391 because the case and/or controversy which brings rise to this action occurred within the Northern District of Ohio.

### Exhaustion of Administrative Procedures

11.   Plaintiff timely filed with the Equal Employment Opportunity Commission (EEOC) a charge of discrimination against Defendants.  Plaintiff files this Complaint within ninety (90) days of receiving a Notice of the Right to Sue from the EEOC.  A copy of the Notice of the Right to Sue is attached as "Exhibit 1" and incorporated herein as if fully rewritten.

### Facts Common to All Counts

12.   Plaintiff is African American and a in protected class.

13.   Plaintiff  was employed by PartsSource from August 2004 through May 2009.

14.   The Plaintiff achieved high productivity and was often the Company's top producer.

15.    Plaintiff was also one of the company's Sales Team Leaders. The average sales team was comprised of four (4) to five(5) sales representatives, including the team leader.

16.    Sales team leaders earned their respective base salaries, their own commission, and also profited from the productivity of their sales team.

17.    The Plaintiff grossed an average of One hundred Ninety Seven Thousand Dollars ($197,000.00) per year for his last  years  with the Company prior to his termination

18.    Another Sales Representative and Sales Team Leader was Shannon Cain, (Hereafter "Cain" ), who is Caucasian.

19.    The Plaintiff and Cain were similarly situated, had the same or similar responsibilities, were supervised by the same people and were subjected to the same company rules and regulations.

20.    Cain continuously and frequently violated company rules and policies.

21.    The company gave Cain preferential treatment, leniency, allowed him to repeatedly violate company rules and policies.

22.    In spite of his  superior productivity over similarly situated Caucasian employees, the Defendants gave preferential treatment to the Caucasian employees.

23.    Under the guise of reconfiguring all of the sales teams, the company restructured the sales teams, demoted Plaintiff and eliminated only Plaintiff's team.

24.    Not only was Plaintiff demoted, but he was then placed on a team with a Caucasian team leader with less seniority and less productivity.

25.    Both Jeff Dalton and Don Hubbard mislead the Plaintiff into believing all Sales Team positions were merely being realigned but were all going to be retained.

26.   In the end, even though the top producer, the Plaintiff was the only senior team member whose team was taken away from him.

27.   Plaintiff's demotion and removal of his position as Senior Sales Team Leader cost him additional profits he was entitled to as a team leader and diminished him with co-workers whom he used to supervise.

28.   After the "reconfiguration," Cain remained a team leader.

29.   Hubbard, was a principal and/or a representative of the Company and supervisor to the Plaintiff and Cain and other Caucasian employees was in charge of implementing policies and procedures concerning the employees.

30.   Hubbard routinely made racial slurs to the Plaintiff such as "nigger" and "You People" in Plaintiff's presence.  When Plaintiff questioned his choice of words, Mr. Hubbard would make it clear to Plaintiff that he meant what he said.

31.   Hubbard being in a position of supervision failed to take any action to correct his behavior, even with requests from Plaintiff.

32.   Despite his superior management position, Hubbard regularly fraternized with the employees, introduced and condoned a sexually charged atmosphere in the workplace.

33.   Hubbard exhibited inappropriate sexual pictures of females, his significant others, other such material in the workplace and illustrated them on the company's computers.

34.   Hubbard's behavior implicitly encouraged his subordinates to use the company computers to discuss issues of a "sexual" nature on a frequent basis.

35.   Dalton, who is a principal and/ manager in the Company, was also involved in its daily operations.

36.   Dalton condoned Hubbard's behavior, and eventually he teamed up with Hubbard and other company employees in order to create policies that were specific to only the Plaintiff and not his Caucasian counterparts.

37.   The Defendants engaged in actions to cause the Plaintiff to fail as compared to his similarly situated Caucasian counterparts

38.   The Defendants also treated the Plaintiff differently by creating, applying and implementing rules specific only to him which were not implemented for similarly situated employees at the company.

39.   Unlike similarly situated Caucasian employees, the Plaintiff was not allowed to get up from his desk.

40.   Both Plaintiff and Cain started later in the day. Both employees were allowed to eat lunches earlier in the day at their desks because of their later start times. However, Dalton and Hubbard eventually forbade the Plaintiff from getting up from his desk to warm his food, but allowed Cain and other employees to do so.

41.   The Defendants also discriminated against the Plaintiff in the application of productivity requirements.

42.   The Company usually lower employee's productivity requirements when they were no longer servicing certain income producing customers.

43.   When the Company's most lucrative customer, GE, who the Plaintiff serviced, stopped doing business with the Company, Defendants retaliated against the Plaintiff and refused to lower the Plaintiff's productivity requirements, despite having reduced the requirements for other similarly situated Caucasian employees.

44. The Defendants promised the Plaintiff it would rectify this, the Plaintiff relied on this, but the Defendants breached this promise.

45. Plaintiff insisted that the company rectify this.  They did not and instead terminated the Plaintiff.

46. Instead, Defendants concocted a story about Plaintiff and Cain attempting to solicit outside business for themselves.

47. Both Plaintiff and Cain denied the allegations.

48. Defendants met with Plaintiff and Cain separately.

49. When Plaintiff suggested he contact the people in question with Defendants' present, Defendants refused and offered him no opportunity to vindicate himself, no matter how hard he tried  contrary for what was done for Cain.

50. Swisher defended the Defendants actions by stating  that Plaintiff was being fired for his numerous write-ups and/or reprimands.

51. These statements by Swisher were false and defamatory, and was published and made in the presence of other people.

52. The Plaintiff's files demonstrate that there are no such "numerous" write-ups and/or reprimands.

53. However, Hubbard, Dalton, and Swisher published these fraudulent allegations to many people, before and after Plaintiff's termination from the company.

54. Dalton, Hubbard and Swisher also met with Cain and confronted him with the same type of allegations.  However, Cain was given an opportunity to explain himself, and he retained his job.

55.  Plaintiff requested proof from the company of the rules he violated. None was forth coming then and now.

56.  The Defendants terminated Plaintiff, not Cain, even though Plaintiff had not been reprimanded in three( 3) years, disciplined or ever suspended and Cain was several times.

57.  After the Plaintiff  was terminated,  Swisher,. Dalton, Hubbard, continued to publish slanderous and defamatory statements regarding him in an effort to justify their actions.

58.  After his termination, the Plaintiff  could not engage in finding comparable positions due to the Company's covenant  not to compete which is still in effect.

59.  The Plaintiff has suffered significant financial and business damages as a result of the Defendants' actions.

## FIRST CAUSE OF ACTION

## <u>Employment Discrimination Based on Race Under Title VII</u>

60.  Plaintiff incorporates Paragraphs 1 through 59 as if fully rewritten herein.

61.  Plaintiff is an employee within the meaning of Title VII and belongs to a class protected under the statute, namely race and/or color.

62.  Defendant, PartsSource, Inc., and its employees and/or representatives, is an employer within the meaning of Title VII.

63.  Defendant intentionally discriminated against plaintiff because of his race and/or color in violation of Title VII by treating him differently than his similarly situated Caucasian counterparts.

64.  Defendants discriminatorily applied rules and policies; giving preferential treatment to Similarly situated Caucasian employees.

8

65.     Defendants restructured the work environment and teams in order to demoted Plaintiff, reduce his scope of employment, without doing the same to the Caucasian employees; creating a hostile work environment for Plaintiff.

66.     Defendants instituted policies and procedures which applied solely to Plaintiff, and not his Caucasian counterparts.

67.     The Defendants also created a pervasive discriminatory and hostile work environment for the Plaintiff, as an African–American employee, who was treated dissimilarly as compared to his Caucasian counterparts.

68.     The above described discriminatory action created an intimidating, oppressive, hostile and offensive work environment, which interfered with the Plaintiff's emotional well being.

69.     As a result of Defendants' conduct, the Plaintiff has suffered damages.

## SECOND CAUSE OF ACTION

### Breach Of Implied Contract

70.     Plaintiff incorporates Paragraphs 1 through 69 as if fully rewritten herein.

71.     An implied contract between the Plaintiff and the Defendant, PartsSource provided that the Plaintiff would not be terminated except for good cause.

72.     The implied contract arose out of the employers' personnel policies, assurances of continued employment  where Plaintiff was not to be discharged except for good cause, Plaintiff's job performance, and performance reviews.

73.     The Plaintiff  performed his obligations under the implied contract.

74.     The Defendant breached the contract by terminating the Plaintiff without good cause

75.     The Plaintiff suffered damages as a result of Defendants' conduct.

## THIRD CAUSE OF ACTION

### Wrongful Termination

76.  The Plaintiff realleges paragraphs 1 through 75 as if fully rewritten herein.

77.  An employee–employer relationship existed between the Plaintiff and the Defendants.

78.  The Defendants wrongfully terminated the Plaintiff in violation of his Civil Rights, Ohio law, and public policy.

79.  Defendants discriminated against Plaintiff, treated him differently then his Caucasian counterparts, and created a hostile work environment solely for Plaintiff.

80.  Defendants engaged in action that would force the Plaintiff to leave his employment.

81.  Defendants gave similarly situated Caucasian employees preferential treatment in the application and implementation of rules and policies, profits, and job security.

82.  When all of Defendants' efforts to treat Plaintiff differently did not lead to Plaintiff's resignation, Defendants wrongfully terminated the Plaintiff in violation of law and public policy.

83.  The Defendants had created a hostile work environment for the Plaintiff with their acts of racial discrimination and wrongful termination.

84.  The reasons given by the Defendants for terminating the Plaintiff were pretextual.

85.  Plaintiff's termination caused him to suffer injury and damages, and is entitled to damages as a result of Defendants' actions.

## FOURTH CAUSE OF ACTION

### Hostile Work Environment

86.  Plaintiff incorporates Paragraphs 1 through 85 as if fully rewritten herein.

87. Defendant, and its employees and/or representatives, created certain policies and procedures, solely for Plaintiff, and not for any other employee, similarly situated or otherwise, in an effort to force Plaintiff to resign from his lucrative position.

88. The more Plaintiff persevered and continued to perform his job duties, despite Defendants' efforts, the more obstacles the Defendants placed in his path, creating a hostile work environment, calculated to force him to resign.

89. Hubbard, as Plaintiff's supervisor, engaged in behavior that was offensive in the work place.

90. When Plaintiff failed to resign, Defendants wrongfully terminated him.

91. Plaintiff is entitled to damages for Defendants' actions.

## FIFTH CAUSE OF ACTION

## Defamation; Slander; Libel

92. Plaintiff incorporates Paragraphs 1 through 91 as if fully rewritten herein.

93. Defendant, its employees and/or representatives, Dalton, Hubbard, and Swisher made fraudulent, disparaging remarks against Plaintiff, calculated to negatively affect Plaintiff's reputation and/or character, and published them to third parties verbally and/or in writing, violation of Ohio Law.

94. Defendants communication was intended to harm the Plaintiff's reputation and to deter third persons from associating with him.

95. The communication published by the Defendants about the Plaintiff was known to the Defendants to be false.

96. The Defendant acted willfully and in reckless disregard as to the truth or falsity of the communication against the Plaintiff.

11

97.     The Plaintiff suffered damages as a result of Defendants conduct and is entitled to damages due to Defendants' actions.

## SIXTH CAUSE OF ACTION

### Negligent Supervision and Negligent Retention

98.     The Plaintiff realleges paragraphs 1 through 98 as if fully rewritten herein.

99.     The Defendant, PartsSource, has a duty to adequately supervise its employees.

98.     Defendant, PartsSource breached that duty by allowing Hubbard, Dalton and Swisher to engage in discriminatory action against the Plaintiff, harass the Plaintiff, reduce his position and profits, blame Plaintiff for actions he did not engage in, and defame his character.

100.    The Defendant PartsSource also breached its duty when Hubbard as supervisor was allowed to use company computers to show pornographic pictures to his subordinates, thus creating a hostile work environment for the Plaintiff.

101.    The Defendant, PartsSource breached its duty when it allowed its supervisors, directors, agents and/or representatives to create a pervasive atmosphere of racial discrimination to exist in its workplace negatively affecting the hiring, retention, firing and earnings of the Plaintiff and other African- American employees in the protected class.

102.    The Defendants actions and that of its supervising employees, agents and representatives committed acts that caused damages to the Plaintiff.

### Attorney Fees

103.    Plaintiff is entitled to an award of attorney fees and costs under Title VII, 42 U.S.C. 2000e-5(k).

12

WHEREFORE, Plaintiff prays for Judgment against the Defendants jointly and/or in excess of $500,000.00 (Five Hundred Thousand Dollars) for the following damages:

a.  Injunctive Relief;

b.  Compensatory Damages;

c.  Front and Back Pay;

d.  Punitive damages;

e.  Attorney's fees;

f.  Prejudgment and post-judgment interest, as authorized by law;

g.  Costs of this suit; and

h.  All other relief the court deems appropriate.

Respectfully submitted,

/s/

_____
LYNDA HARVEY WILLIAMS #0043747
Attorney for Plaintiff
106 S. Main St., Suite 2300
Akron, Ohio 44308
330-376-2272 - phone
330-376-5618 - fax
Lhw44308@yahoo.com

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

/s/

_____
LYNDA HARVEY WILLIAMS #0043747
Attorney for Plaintiff