**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| **JIBAU W. HARVEY** | ) | **CASE NO. 5:10 CV 01633** |
| | ) | |
| **Plaintiff** | ) | **JUDGE JOHN A. ADAMS** |
| | ) | |
| **-vs-** | ) | |
| | ) | |
| **PARTSSOURCE, INC., et al.** | ) | |
| | ) | |
| **Defendant** | ) | |
| | ) | |

---

**PLAINTIFF'S BRIEF IN RESPONSE TO
DEFENDANTS' MOTION FOR SANCTIONS;
and
OBJECTION TO EVIDENTIARY HEARING**

---

Plaintiff, Jibau Harvey raises objections to the court's scheduling of the Evidentiary hearing on March 17, 2011, and the briefing schedule in anticipation of the hearing. Said objections are outlined herein. Without waiving said objections, Plaintiff, Jibau Harvey, submits his Brief in Response to Defendant's Motion for Sanctions and moves the Court to deny Defendants PartsSource, Inc., Donald Hubbard, Jeffrey Dalton, and Nancy Swisher's Motion to Sanction Plaintiff. The Motion lacks credence, especially to material issues in this case. Much of the issues and allegations raised by the Defendants apply to post termination issues.

Plaintiff's objections and reasons in support of his Motion in opposition to the Defendants' Motion are set forth in the accompanying Memorandum of Support, Points and Authorities and the evidence cited therein.

## Plaintiff's Objections to Evidentiary Hearing and Briefing Schedule

Plaintiff, Jibau Harvey, raises the following objections to the court's scheduling of an evidentiary hearing in response to Defendants impromptu complaint to the court during the Status Conference in regards to Plaintiff's alleged "fraud" in responding to interrogatories and deposition questions.  Plaintiff also objects to court's briefing schedule set in anticipation of the evidentiary hearing.

1. **Plaintiff objects to the scheduling of an Evidentiary Hearing on a Motion for Sanctions filed by Defendant, and the timeline for Plaintiff to respond, because Defendants asked for leave to file a motion to dismiss, which the court declined to grant, but yet, Defendants request for dismissal as a sanction was still included in the motion, whereby creating dispositive motion.**

The court instructed the Defendants to file their Motion for Sanctions, but declined to grant leave for Defendants to file a Motion to Dismiss.  As a result, the Defendants still imbedded a "constructive" motion to dismiss within the Motion for Sanctions, essentially creating a dispositive motion, which was likely not anticipated by the Court when it ordered the Defendants to file their Motion for Sanctions and gave the Plaintiff two (2) days to respond.  Nonetheless, the Defendants motion requests dispositive relief.  As a result, Plaintiff should be allowed thirty (30) days to respond to such a motion under Local R. 7.1, if indeed it is dispositive and fourteen (14) days if it is not dispositive.  Only allowing two (2) days for Plaintiff to respond to such a motion is prejudicial to Plaintiff, especially since the court allowed Defendant to file the Motion for Sanctions with no time restriction, but required Plaintiff's response to be due less than two (2) days after Defendants filed their brief.  That being said, Plaintiff recognizes and appreciates that the court granted Plaintiff an extra four (4) hours to file Plaintiff's Response to the Motion for Sanctions.

2

Local R. 7.1 allows for thirty (30) days for a responding party to respond to a dispositive motion, and fourteen (14) days to respond to a non-dispositive motion.  Given that Plaintiff's Motion was not filed until Monday and was replete with statements which Plaintiff did not have ample time to address and support with authorities.  Plaintiff believes that he should have been granted a longer period to respond, presumably in line with Local R. 7.1, and was prejudiced as a result of the expedited schedule, especially since neither side declared an emergency in holding such a hearing.

**2.      Plaintiff objects to the Evidentiary Hearing, as Defendants acted in bad faith when they failed to inform Plaintiff of alleged "fraud," during a conference call on March 7, 2011 between Plaintiff and Defendants to discuss issues of the case prior to court, or prior to the Status Conference; yet, was able to mention the issue at a Status Conference and have a hearing was set, prior to the filing of any motion.**

Defendants acted in bad faith when they failed to provide Plaintiff with alleged instances of fraud and/or misrepresentation prior to presenting such evidence to the Court.  The parties had a telephone conference on March 7, 2011 to attempt to resolve any discovery issues prior to the March 10, 2011 Status Conference.  Plaintiff's attorney believed that the parties were working in conjunction with each other to resolve any potential issues prior to the Status Conference.  However, Defendants' counsel was not forthcoming, as they seemed on the telephone conference as if they were attempting to resolve issues prior the Status Conference; yet, without ever mentioning the issue to Plaintiff's counsel, raised an issue pertaining to Plaintiff's discovery responses directly with the court.  Plaintiff believes that this was done in an attempt to surprise the parties and the court and to divert the attention away from the issues at hand, especially because Plaintiff had a Motion to add A. Ray Dalton as a party, and Defendant had still not sought leave to file a counterclaim.

It is important to note that only the Defendants benefit from any delay in the case, as they have the means to sustain a convoluted and protracted lawsuit.  Therefore, Plaintiff objects to the

3

evidentiary hearing, at this point, because Plaintiff believes that the Defendants presentation of this information at the Status Conference was calculated to surprise the court and the Plaintiff and to delay the proceedings, and Defendants bad faith behavior should not be rewarded, as it would be prejudicial to the Plaintiff.

In addition, Plaintiff failed to file any appropriate Motion with the court alleging in writing his concerns prior to the scheduling of the Evidentiary Hearing.  There was no prior notice with an opportunity for Plaintiff to adequately address or correct the situation.  Such notice would have avoided ability of the Defendants to surprise the Plaintiff and the Court with such information at the Status Conference.  In addition, a Motion also would have put the court and the plaintiff on notice, so that both the Plaintiff and the Court would have had an opportunity to respond to the Defendants allegations.  However, since the Defendants did not discuss this issue with the Plaintiff, the Defendants have drawn their own conclusions and have failed to attempt to seek clarification and/or explanation from Plaintiff for his testimony.  Had Defendant sought to resolve this issue between the parties, prior to coming to the court pursuant to the spirit of the civil rules, then the need for an evidentiary hearing could have been avoided, especially since much of what the Defendants attempted to present to the court at the Status Conference was explained simply by looking at the record.

Defendant  failed to file an appropriate Motion or to give Plaintiff notice with an opportunity to cure the discrepancy or supplement his answers.  As a result, Plaintiff objects to the scheduling of this hearing, as without a proper motion before the court with time to respond, the Plaintiff has been prejudiced.

3.     **Plaintiff objects to the Evidentiary Hearing, as Defendant has failed to substantiate its evidence, has provided such evidence to the court in an attempt to surprise the court and the Plaintiff, without first providing the evidence to Plaintiff, by simply handing it to the court to be reviewed by the tribunal.  Such evidence amounts to hearsay, and as a result is inadmissible.**

This evidence was submitted to the court without first providing an appropriate motion, establishing the requisite foundation and substantiation, and without being admitted into evidence with Plaintiff having an opportunity to object to such submission.  In addition, as of the filing of this motion, the Defendants have still not provided any adequately authenticating documentation to Plaintiff in anticipation of the scheduled evidentiary hearing tomorrow.

Defendants used the Status Conference as a forum to accuse the Plaintiff of fraudulent activity without first providing any proof that the information presented to the court was valid and/or credible, and either not hearsay or subject to a hearsay exception.  By admitting such evidence in this fashion, Plaintiff loses the ability to confront the witness or information presented in support of Defendants' position.  In addition, without receiving such information, prior to its submittal to the court, Plaintiff cannot respond to the information in the best interest of efficiency and justice.  Further, the information is hearsay, and not allowed under the Federal Rules of Evidence, unless Defendants can prove that the evidence is subjected to a hearsay exception.

The Defendants neglected to provide notice to the court or file a motion with the substantiating documentation which could be a part of the record, and to which Plaintiff could have filed a response to prior to the Court's scheduling of an evidentiary hearing on the issues.  As a consequence, the parties have been rushed into pleading their cases with only a couple of days prior to the evidentiary hearing, and Plaintiff has been prejudiced as a result.

**4.      Plaintiff objects to the Evidentiary Hearing as Defendants have exhausted their time to depose the Plaintiff.**

Allowing Defendants to cross-examine or question Plaintiff on issues raised in Defendants' Motion, unless strictly monitored by the court, allows Defendants another opportunity to ask questions of Plaintiff without seeking leave from the court for additional time to depose Plaintiff. This is important to note, since the Defendants have refused to allow Plaintiff any time to reconvene the depositions of Donald Hubbard.

Without waiving said objections, Plaintiff submits the attached Brief in Support of dismissing Defendants' Motion for Sanctions:

### PLAINTIFF'S BRIEF IN SUPPORT OF DISMISSING
### DEFENDANTS' MOTION FOR SANCTIONS

Jibau Harvey ("Harvey") was terminated from PartsSource, Inc. on May 13, 2009.  He subsequently filed suit against PartsSource, Inc., Donald Hubbard, Nancy Swisher and Jeffrey Dalton under the following causes of actions (1) Race Discrimination in Employment; (2) Wrongful Discharge; (3) Implied Breach of Contract; (4) Negligent Supervision; and (5) Defamation.

Since the filing of the lawsuit the Defendants have repeatedly redirected the court from focusing on the credence of the case and engaged in tactics to thwart the Plaintiff from a just adjudication of his case.  The Defendants' Motion for Sanctions seems to be a continuation of Defendants tactics to delay and divert the just adjudication of the case.

## I.  LAW & ARGUMENT

**A.**     **Court's Authority to Impose Sanctions**

A court's authority to impose discovery sanctions comes from Fed. R. Civ. P. 37, as well as from the inherent power of the court. See **Krumwiede v. Brighton Associates, L.L.C.**, (May 8, 2006) 2006 WL 1308629 (U. S. Dist. Court, N.D. Illinois, Eastern Division) at 9, citing **Chambers v. NASCO, Inc.** (1991), 501 U.S. 32.  However, the court's inherent powers "must be exercised with restraint and discretion." **Chambers** at 44.

**1.**     **Fed. R. Civ. P. 37**

In their Motion for Sanctions, Defendants have failed to cite to any rules, specifically, Defendants completely ignore Fed. R. Civ. P. 37 by failing to cite or even reference the rule. Defendant only cites the court's authority to issue sanctions as pursuant to the court's inherent powers.  Defendants' failure to cite the Civil Rules is important where an evidentiary hearing on the matter could have been avoided if the Defendants had simply turned to the Fed. R. Civ. P. 37.

Fed. R. Civ. P. 37 outlines procedures that should be followed in the event that a party fails to make disclosures or cooperate in discovery, as well as the nature of sanctions which should be imposed. The first part of Fed. R. Civ. P. 37 addresses how parties are to proceed in conducting discovery, prior to any issue of sanctions. Fed. R. Civ. P. 37(a) – "Motion for an Order Compelling Disclosure or Discovery" states, in pertinent part,

(1) *In General.* On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

(2) *Appropriate Court.* A motion for an order to a party must be made in the court where the action is pending. A motion for an order to a nonparty must be made in the court where the discovery is or will be taken.

(3) *Specific Motions.*

(A) *To Compel Disclosure.* If a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions.

(B) *To Compel a Discovery Response.* A party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if:

(i) a deponent fails to answer a question asked under Rules 30 or 31;

(ii) a corporation or other entity fails to make a designation under Rule 30(b)(6) or 31(a)(4);

(iii) a party fails to answer an interrogatory submitted under Rule 33, or

(iv) a party fails to respond that inspection will be permitted — or fails to permit inspection — as requested under Rule 34.

(C) *Related to a Deposition.* When taking an oral deposition, the party asking a question may complete or adjourn the examination before moving for an order.

(4) *Evasive or Incomplete Disclosure, Answer, or Response.* For purposes of this subdivision (a), an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond.

(5) *Payment of Expenses; Protective Orders.*

(A) *If the Motion Is Granted (or Disclosure or Discovery Is Provided After Filing).* If the motion is granted — or if the disclosure or requested discovery is provided after the motion was filed — the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both

8

to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:

(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;

(ii) the opposing party's nondisclosure, response, or objection was substantially justified; or

(iii) other circumstances make an award of expenses unjust.

(B) *If the Motion Is Denied.* If the motion is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.

C) *If the Motion Is Granted in Part and Denied in Part.* If the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion.

Based upon the procedure rule outlined above, the Defendants in this case should have first conferred or attempted to confer with Plaintiff's counsel in regards to the Defendants' allegations of fraud and false testimony. This did not happen in this case. The Defendants' failure to discuss these issues with Plaintiff's counsel was a deliberate move, calculated to allow the Defendants the ability to pontificate at the Status Conference, and to once again delay the proceedings and avoid the court's addressing issues dealing directly with the merits of the case, or any of Plaintiff's pending issues before the court, including but not limited to Plaintiff's Motion to Add A. Ray Dalton as a Party, and Plaintiff's own Motion to Compel, which was filed pursuant to Fed. R. Civ. P. 37.[1]

---

[1]  At the Case Management Conference, the Defendant's counsel eluded to a counterclaim and stopped the proceedings by giving evidence to the court about a "sex club" and submitted piece-meal e-mails to the court as acquired evidence of Defendants' justification in terminating Plaintiff. Defendant's counsel also brought allegations of Larry Wojtala's need to respond to Defendant's subpoenas at the January Status Conference. As a result, the court responded and scheduled a Show Cause hearing, even though Defendant had not filed any such motion prior to the Status Conference. Defendants actions were in contravention of the civil rules and in the interest of the preservation of the record in this case.

9

Plaintiff's counsel scheduled a telephone conference with the attorneys on the case which was held on March 7, 2010, three (3) days before the Status Conference.  The purpose of this telephone conference was to discuss any issues the parties had in the case, particularly as it relates to discovery.  During this telephone conference, Defendants' counsel had every opportunity to address any questions or issues concerning discovery with Plaintiff's counsel.  However, not only did Defendants' counsel neglect to give notice about Plaintiff's allegedly false statements, and seemingly participate in Plaintiff's good faith attempts to resolve any issues prior to the Status Conference, Defendants' counsel saved the presentation of the materials until the Status Conference.  Plaintiff believes this was done in an effort to surprise the court and the Plaintiff, and to once again derail the court's hearing from focusing on the Plaintiff's cause of action or pending motions.

Fed. R. Civ. P. 37(a)(1) has a notice provision by which a party can file a motion to compel or disclosure or discovery pursuant to Fed. R. Civ. P. 37(a)(3), which outlines the specific types of motions to be filed.  Fed. R. Civ. P. 37(a)(4) addresses the concerns raised by Defendants at the Status Conference, "For purposes of this subdivision (a), an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."  Therefore, as Defendants' allegations raised at the Status Conference, and in its Motion for Sanction elude that Plaintiff was evasive and failed to disclose or answer questions completely, then the next action would have been for the Defendants to file a Motion to Compel a Discovery Response under Fed. R. Civ. P. 37(a)(3)(B).  Defendants failed to file the necessary motion pursuant to this rule, or any other provision contained within Fed. R. Civ. P. 37(a).

Fed. R. Civ. P. 37(a)(5) also addresses payment of expenses and protective orders based upon whether the Court grants a motion under Fed. R. Civ. R. 37(a)(3).  Pursuant to Fed. R. Civ. P. 37(a)(5)(1), the court cannot award reasonable fees if Defendants' motion is successful if the

10

Defendants filed the motion before attempting in good faith to obtain the disclosure or discovery without court action.  The same applies if the opposing party's nondisclosure, response, or objection was substantially justified.  Here, the Defendants failed to file a motion, and in essence made such allegations orally to the court, without first attempting to resolve the matters in good faith.  These actions constitute bad faith on behalf of the Defendants, especially since Plaintiff followed these procedures in regards to the discovery requests which Defendants have failed to appropriately respond.  The court should not reward the Defendants for such bad faith tactics by imposing sanctions against the Plaintiff, when the Defendants failed to give Plaintiff an opportunity to clarify or address the issues raised in Plaintiff's Motion for Sanctions, prior to it ever being filed with the court.

Fed. R. Civ. P. 37(b) addresses sanctions which could occur if a party is found to have disobeyed an order of the court.  It is this under this section that the court has the authority, independent of its inherent powers, to issue sanctions against a party to the action who fails to abide by the orders of the court.

### 2.    The Court's Inherent Powers

As indicated above, the court also has the ability to issue sanctions pursuant to its inherent powers, however, as held by the **Chambers** court, it is within the Court's inherent authority to sanction any party that abuses the discovery process. **Id**. at 44-45.  However, because of the potency of the inherent powers, they must be exercised with restraint and discretion. **Id**. at 43.  "A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." **Id**. at 44.

Most, if not all, of the cases which the Defendants cite where the court invoked its inherent powers to issue sanctions, whether dismissal or otherwise, occurred after the parties had filed

11

Summary Judgment, or the discovery process was completed, or a considerable amount of time had elapsed in the case, or the nonmoving party had continuously engaged in egregious behavior towards the discovery process.  The case at hand is easily distinguishable from these cases.  Additionally, the cases where sanctions were imposed involved the parties affirmative manipulation of actual evidence by way of destruction,[2] spoliation, or fabrication of the evidence.

In the instant case, Defendants attempt to repeatedly indicate that Plaintiff has "fabricated" evidence.  However, assuming arguendo that Defendant's allegations against Plaintiff were correct, Plaintiff's alleged behavior does not amount to a fabrication of evidence as Plaintiff has not attempted to create a false document or piece of evidence in order to commit fraud against the court, as occurred in **Vargas v. Peltz,** 901 F. Supp. 1572 (S.D. Fla. 1995), where the Plaintiff fabricated evidence by presenting underwear which the Defendant allegedly had instructed her to use, when she had actually purchased it at the store for the purposes of the deposition.

Not only do the Defendants neglect to cite to the provisions in the Federal Rules of Civil Procedure in their Motion for Sanctions, they also cite one-sided case law which points to egregious discovery conduct, distinguishable from the facts in this case, and request the court to use its inherent powers to dismiss Plaintiff's case.  However, the court should take into consideration the Defendant's failure to attempt to adhere to the procedures in Fed. R. Civ. P. 37(a), and only use its

---

[2]     Defendants include a footnote in their Brief which explains that Plaintiff's hard-drive was not preserved, seemingly to imply that Plaintiff in some manner may have destroyed or spoliated evidence.  It is important to note that Defendant's counsel informed the court at the Case Management Conference that the Defendants had secured Plaintiff's hard-drive, only to later send a letter to Plaintiff's counsel indicating that Defendant had in fact not secured Plaintiff's hard-drive, and therefore, the information from Plaintiff's hard-drive is not available from Defendant.  Therefore, any implication that Plaintiff destroyed his hard-drive to avoid this litigation would also implied that Defendant did the same.  Further, the "crashing" of Plaintiff's personal computer was prior to the lawsuit.

12

inherent power to impose sanctions if the court should determine that Plaintiff's conduct in this case was so egregious and so deeply founded in bad faith that his actions were prejudicial to the Defendants.  In making such a determination, the court should also consider that the Defendants have acted in bad faith with discovery and the introduction of this issue before the court, and not reward them for bad behavior, as a defendant's actions in discovery are an issue for the court to consider when discussing sanctions.  See **Moore v. City of Chicago** (June 14, 2006) 2006 WL 1710234, (U.S. Dist. Court, N.D. Ill., Eastern Division) at 20.

A.   **Whether Plaintiff's Deposition Testimony and Response to Interrogatories Warrant Sanctions by the Court.**

_____1.   **Plaintiff's conduct in discovery, as alleged by Defendants, does not pertain to the underlying causes of actions in Plaintiff's Compliant, only to Plaintiff's activities occurring after the date of termination of May 13, 2009.**

Prior to discussing the validity, or lack thereof, of Defendants' claims concerning the veracity of Plaintiff's testimony.  It is pertinent to point out that the Defendants have raised the issue of sanctions based upon activities all occurring after Plaintiff's date of termination.  This has been the driving force of Defendants' discovery since discovery began; however, Defendant's counsel led the court to believe at the Status Conference on March 10, 2011 that the Defendants have put a significant amount of time and effort in not defending against the merits of the case, but in seeking to determine whether the Plaintiff has provided truthful testimony.  If this was indeed Defendants' counsel's statement, then it is completely inaccurate.  Since the Defendants alleged a counterclaim at the Case Management Conference, Defendant's discovery has been geared towards the ascertaining information towards a counterclaim, not in defending the merits of the lawsuit.

The information provided in Plaintiff's discovery responses and his deposition testimony has helped to further Defendants in their seeking of discovery from people Plaintiff dealt with after his

13

termination.  Contrary to the Defendants' assertions in court, it is the testimony provided by Plaintiff in regards to Larry Wojtala and his companies which even led Defendants to the evidence they claim that Plaintiff was attempting to conceal.

In fact, even with all of the discovery which Plaintiff has produced and which Defendants have sought, including, but not limited to the responses from Mediserve, the Defendants have yet to uncover one piece of evidence demonstrating that the Plaintiff indeed sold parts under the table while he was employed at PartsSource.  Defendants elude that there are suspicious e-mails between Larry Wojtola and the Plaintiff. (See Transcript of Jibau Harvey Deposition ECF No. 60 "Harvey Dep" 183:4-21), hereinafter (Harvey Deposition _____).  However, further review of the e-mails shows that there were no dealings under the table, Plaintiff added Sequoia Medical to the database, in case their transaction ended up in a sale, or an "invoice."  (See E-mails between Plaintiff and Larry Wojtala, marked as Plaintiff's "Exhibit A," and incorporated herein as if fully rewritten).

In addition, if Plaintiff had been doing business with Sequoia or was a part of the company, he would not have asked Mr. Wojtola for the Company information to input in the database.  It is evident from the evidence produced by the Defendants in this case that PartsSource's employees regularly and routinely used Sequoia, even after Mr. Harvey was terminated. (See invoice from Sequoia to PartsSource dated August 20, 2009, marked as "Exhibit B," and Documentation of Sequoia's dealing with PartsSource after Plaintiff's Termination, markers as "Exhibit C," both incorporated as if fully rewritten).  This is just another example of the "smoke and mirrors" that the Defendants would like to believe leads to Plaintiff's "suspicious" activities, when in fact nothing was there.

14

### 2.    Plaintiff did not conceal the nature of his dealings with Larry Wojtala.

Contrary to the Defendants allegations, when the record and the information provided by Plaintiff is reviewed in totality, Plaintiff's conduct in this case, especially in relation to Larry Wojtala and his companies, does not warrant sanctions from the Court, as Plaintiff did not provide false testimony to the court, nor did Plaintiff act in bad faith in relation to his deposition or interrogatory answers.  The Defendants argue heavily for sanctions for Plaintiff's testimony; however, in order to impose sanctions, a court must first determine whether the nonmoving party has conducted himself in a manner warranting sanctions.

In their Motion for Sanctions, Defendants indicated that Plaintiff's Interrogatory Answers and his deposition testimony, was "proved [sic] false" by later discovery.  However, Defendants fail to demonstrate this to the court.  Defendants seemingly reach this conclusion by providing the Plaintiff's deposition testimony and interrogatory answers to the court as out-of-context statements that are "mixed and matched" to give the illusion that Plaintiff was deceptive in his testimony. In actuality, when Plaintiff's statements are read in the entirety of the exchange between Plaintiff and Defendants' counsel, there is no attempt by Plaintiff to conceal, defraud, or present testimony to the court in bad faith, especially as it relates to Larry Wojtola and his companies.  There was no false testimony, nor any intent to deceive when the exchange is read in its entirety, especially when Plaintiff's answers are viewed in the light most favorable to Plaintiff.

 In fact, based on Plaintiff's testimony and disclosures, the Defendants were able to secure the e-mail information from Mediserve that they have presented to the court to prove that Plaintiff's testimony was false.  If Plaintiff's intent was to divert the Defendants away from discovering such information, then Plaintiff would not have provided them with the testimony which lead Defendants to the e-mails in question.

15

The gist of the Defendants' arguments about Plaintiff's alleged false testimony simply boils down to a question of semantics.  The Sixth District Court of Appeals has held, "where the defendant is under oath and in response to a question asked of him gives an answer which is literally accurate, technically responsive, or legally truthful, he cannot lawfully be convicted of perjury."  **United States v. Wall** (1967), 371 F.2d 398, 400.  The language in **Wall** reinforces the notion that a party's testimony which is true under the methodology listed above, cannot be found to by the court to be false or a lie.  Since the **Wall** case, concerns a criminal action, the standard of proof there was presumably beyond a reasonable doubt; however, the standard of proof in this could be the heightened standard of clear and convincing evidence, given the fact that the Defendants have raised a claim of bad faith on Plaintiff's part and requested dismissal.  See **Moore** at 15, citing **Maynard v. Nyugen**, 332 F.3d 462, 467-68 (7th Cir. 1988).

Here, Plaintiff's responses to the Defendants' questions during depositions were literally accurate, technically responsive, or legally truthful, and Plaintiff's answers seem logical based on Plaintiff's interpretation of the question.  For example, as referenced in Defendant's Brief, the following exchange took place between Plaintiff and Defendant's counsel:

Q:    Tell me every *place* you've worked since May 13th, 2009.

A:    I haven't worked *anywhere*.

Q:    Other than working as a trainer *at* Buckeye Gym?  (Harvey deposition 75:11-17, emphasis added).

Here, Plaintiff's literal translation of Defendants' question posed to Plaintiff was what "place" he had "worked."  Plaintiff seems to answer as to the literal meaning of the word "place" as to physical location where he has worked, as he responded with the use of the word "anywhere," rather than the use of "no one."  The Defendant's follow-up question indicating "at" also

demonstrates the parties seemed to be addressing the physical meaning of "place."  Therefore, Plaintiff's answer to this question was correct when the literal and perhaps legal meaning of the words was applied.

In regards to Larry Wojtala, Plaintiff disclosed all his dealings with Mr. Wojtala during the depositions and testified truthfully based on his interpretation of the questions and his understanding of the meanings of the words used.  Defendants cite the interrogatories, and Plaintiff's failure to include Mr. Wojtala's name in the responses; however, Defendants ignore the fact that Plaintiff reserved the right to supplement, and assume that Plaintiff intentionally omitted this information. However, during his deposition testimony, Plaintiff disclosed the fact that he had received money from Larry Wojtala in the depositions, demonstrating that he did not have an intention to be untruthful or defraud the court,

Q:      Have you received any money whatsoever from Larry Wojtala?

A:      Yes.

Q:      How much?

A:      I'm not sure of the amount.

Q:      Do you know approximately how much?

A:      From what – what days?

Q:      Since you were terminated.

A:      I'd say approximately, maybe five to $8,000.00. (Harvey deposition 76:17-23, emphasis added). (See also Harvey deposition 92:12-18).

Had Defendant discussed Defendant's perceived discrepancies between the deposition testimony and the interrogatory answers with Plaintiff, then this issue could have been addressed between the parties prior to coming to court.

17

Plaintiff also discusses his relationship with Sequoia and Medfirst during his deposition. (Harvey deposition 77:11-79:8).  In addition, Plaintiff specifically addresses the "referral fee" (Harvey deposition 82:16-19).  He also references that Mr. Wojtala deposited money in his account. (Harvey deposition 82:23). Despite this testimony, the Defendants mislead the court by indicating that the checks seem to bear Plaintiff's handwritten endorsement.  This is completely inaccurate, unless it relates to one check where Plaintiff signed his name.  The other's indicate "for deposit only" and contrary to Defendants' assertions, Plaintiff did not write this, nor did he deposit it into his account.  Defendant then goes even further to indicate that the paper checks and indorsements are inconsistent with Plaintiff's testimony.  To the contrary, the paper checks are completely in line with Plaintiff's testimony.  Defendants have again attempted to mislead the court in relation to this evidence and posit it to the court as false, which is only speculation on Defendants' behalf, and contrary to the weight of the evidence.

In regards to the e-mail addresses referenced, Defendants are again proffering inaccurate information to the Court.  If only they would have sought clarification from Plaintiff prior to doing so.  Defendants indicate that Plaintiff was "untruthful" as it relates to other e-mails.  However, when Plaintiff testified in regards to the e-mail addresses, Harvey indicated in his answers that they were "all I can remember at this time," (Harvey deposition, 52:3-4) and "that's all I can recall right now." (Id. at 56:12).  Therefore, it is the Defendants who are raising the allegation that this testimony was untruthful, not the spirit of the testimony itself, as Plaintiff indicated it was all he could recall at that time.  In addition, because an e-mail address is listed on the closing of an e-mail under Plaintiff's name, Defendants have deduced that Plaintiff was untruthful, as he did not disclose this e-mail address.  Defendants have not produced a single e-mail sent from Plaintiff to this address, because Plaintiff never used this address.

18

In regards to the referral fee, Defendants put words in Plaintiff's mouth when they attempt to summarize the nature of the referral fee.  What is unclear to the Defendants, and for which they failed to seek clarification, is that there is an industry standard, recognized by companies, including PartsSource as it relates to "referral fees," also termed "finder's fees."  Therefore, without Defendants' knowledge of this information, it is easy for them to mis-characterize Plaintiff's statements about his the nature of his referral fees from Sequoia and Medfirst.[3]

As if attempting to interpret Plaintiff's understanding of the question is not enough, throughout the Defendants' Brief, the Defendants posits a legal conclusion, then use the Plaintiff's words to reinforce their legal conclusion.  This is in essence putting words in Plaintiff's mouth.  In addition, the Defendants misleadingly try to present to the court that Plaintiff attempted to defraud the court by citing information left out of Interrogatory responses, but disclosed in depositions.  The Defendants fail to indicate that some of the discovery responses were objected to by Plaintiff's counsel as to the legal understanding of the verbiage, as well as the fact that Plaintiff reserved the right to supplement these answers.  Further, some of Plaintiff's responses indicated that his testimony was based upon his recollection at the time and that what he provided to the court was what he could recall at that time, as explained in regards to the e-mail issue above.

---

[3]     It is again important to note that through all of the discovery that Defendants have conducted, they have yet to produce any substantiating documentation as to their direct defenses to the underlying cause to Plaintiff's Complaint.

19

2.      Actions available to the Court

Based on the testimony provided at the evidentiary hearing, the Court could dismiss Defendant's Motion for Sanctions for failure to prove that Plaintiff acted in bad faith and apply provision of Fed. R. Civ. Pro. 37(a)(1)(5).  The Court could find that Plaintiff's actions warrant a sanction, but refused to impose one due to Defendants bad faith, Defendant's failure to act under Fed. R. Civ. Pro. 37(a)(1), or Defendant's failure to notify the other side of the Defendant's perceived issues with Plaintiff's discovery responses.

The Court could also find that sanctions are warranted, and take any action allowable under the rules indicated herein based on the Court's determination of whether Plaintiff acted in bad faith and attempted to commit fraud upon the court, as alleged by Defendants.

Defendants offer various sanctions including dismissal of the case, striking Plaintiff's deposition, and ordering Plaintiff to pay certain costs associated with Plaintiff's alleged conduct. However, none of these sanctions are appropriate at this time, as Plaintiff has acted in good faith and cooperated with discovery process.  In the unlikely event that the Defendants are able to prove to the Court that Defendant meets the standards herein for the court to impose sanction, then the Defendant would like an opportunity to submit a supplemental brief to the court after the testimony has been presented, and the court indicates it is considering sanctions. Until such a time, Plaintiff submits his opposition to dismissal as the a sanction, as indicated below.

3.      Whether Dismissal is an Appropriate Sanction

The Defendants seek for the court to dismiss the Plaintiff's case based upon the Defendants' allegations of sanctions.  It is important to note, that although the court clearly ordered the Defendants to file sanctions in anticipation of the March 17, 2011 hearing, and declined to grant leave to Defendants to file a Motion to Dismiss, the Defendants have imbedded such a dispositive

20

motion within their request for sanctions.  This "constructive" motion to dismiss is indicative of the types of tactics that the Defendants have used in this case in an attempt to avoid arriving at the merits of Plaintiff's Complaint.  As a result, Plaintiff makes a cursory argument herein in rebuttal of Defendant's "constructive" motion to dismiss.  However, Plaintiff requests that if the court is inclined to impose any dispositive sanctions pursuant to the Defendants' motion, that it allow Plaintiff leave to fully brief the Defendant's "constructive" dispositive motion, in light of the fact that the local rules allow a period of thirty (30) days for a party to respond to any such motion, and Plaintiff has only had two (2) days to respond herein.

The Defendants reference the inherent powers of the court to issue sanctions and dismiss a case, but fail to address Fed. R. Civ. P. 37 in their motion for sanctions.  Although the Defendants rely heavily on the court's inherent power to dismiss a case, it is important to note that "a court's invocation of its inherent powers has been described as a 'draconian measure' and dismissal under those powers should be ordered sparingly."  **Moore v. City of Chicago** (June 14, 2006) 2006 WL 1710234, (U. S. Dist. Court, N.D. Ill., Eastern Division) at 16, citing **Dotson v. Bravo**, 321 F.3d 663, 667 (7th Cir. 2003).  Therefore, it is also important for a party seeking sanctions to address the viability of such sanction under the provisions of Fed. R. Civ. P. 37.

In order to dismiss Plaintiff's action, the court must find his willfulness, bad faith or fault by clear and convincing evidence.  **Moore** at 15, citing **Maynard** at 467-68 (7th Cir. 1988).  Dismissal is warranted *only* when there is evidence of willfulness, bad faith  or fault on the part of the sanctioned party.  **Moore** at 15.  In fact,

> Dismissal of an action for failure to cooperate in discovery is a sanction of last resort that may be imposed only if the court concludes that a party's failure to cooperate in discovery is due to willfulness, bad faith or fault.... [A] dismissal of a complaint with prejudice as a sanction for failure to cooperate in discovery must be 'accompanied by some articulation on the record of the Court's resolution of the factual, legal and discretionary issues presented.'

21

**Patton v. Aerojet Ordnance Co.,** 765 F.2d 604, 607 (6th Cir.1985), quoting **Quality Prefabrication, Inc. v. Daniel J. Keating Co.**, 675 F.2d 77, 81 (3rd Cir.1982).

The cases cited by Defendants, seemingly in support of dismissal, actually support the Plaintiff's position that dismissal is not warranted in this case, even assuming arguendo that the Defendants could provide their allegations by clear and convincing evidence. The cases cited by Defendants deal directly with Defendants who committed some egregious, repeated, blatant and active deception upon the court. The parties had actively interjected falsified evidence, fabricated evidence, or spoliation or manipulated the evidence of the case in some manner. The Defendants would like the court to believe that just because they label that the Plaintiff's testimony rises to the level of these egregious and fraudulent actions without anything more to support it. Again, even assuming arguendo that the Defendants could prove that Plaintiff's testimony was inaccurate, at best, it can only be characterized as either an omission or a misrepresentation. The next issue is whether or not it can be considered as "material" to the case.

In **Fharmacy Records v. Salaam Nassar**, 379 Fed Appx. 522 (6th Cir. 2010), (As referenced in Defendants' Brief and attached to Defendants' Brief pursuant to court rules), the court identified the four factors they utilize to guide their review of a district court's decision to dismiss a party's lawsuit as a sanction. Referred to as the "Regional Refuse factors," they are as follows:

(1) whether the party's [conduct] [was] due to willfulness, bad faith, or fault;
(2) whether the adversary was prejudiced by the dismissed party's conduct;
(3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and
(4) whether less drastic sanctions were imposed or considered before dismissal was ordered.

22

**Id.** at 524 citing **Wu v. T.W. Wang, Inc.**, 420 F.3rd 641, 643 (6th Cir. 2005), citing **Knoll v. American Tel. & Tel. Co.**, 176 F.3d 359, 363 (6th Cir. 1999); see **Regional Refuse Sys., Inc. v. Inland Reclamation Co.**, 842 F.2d 150,155 (6th Cir. 1988).

When applying the **Regional Refuse** factors to this case, dismissal, and even sanctions, are not applicable.

1.   **Whether the Plaintiff's conduct was due to willfulness, bad faith, or fault.**

The issue here is whether Plaintiff has worked since his discharge from PartsSource.  Both in Plaintiff's deposition and his response to Interrogatories, Plaintiff has not been offered a position anywhere.

At Plaintiff's deposition, the following question was posed:

Q:   Since your employment with PartsSource ended, have you been offered a position anywhere?

A.   I have not.  (Harvey Deposition 308: 7-10).

The same answer was given by Plaintiff in response to Interrogatory No. 11.  Plaintiff testified in his deposition he is not self-employed for the last ten (10) years, nor was he an independent contractor.

Defendants argue that this was false testimony and drew a clear inference that the Plaintiff was employed by Larry Wotjala.  The Plaintiff was truthful that he has not been employed anywhere since he was terminated from PartsSource.  More important, Larry Wotjala did not employ Plaintiff (See Wotjala Affidavit attached as "Exhibit D," and incorporated herein as if fully rewritten).

In addition, Defendant's allegations of bad faith on behalf of Plaintiff have to be proven by clear and convincing evidence to warrant dismissal.  Here, the Defendants draw speculation and use

23

words such as "fabrication," but have not actually shown where Plaintiff was untruthful.  Assuming arguendo that the court believes that Plaintiff was untruthful, that type of testimony does not necessarily rise to the level of "bad faith," especially when the bad faith that Defendants allege deals with Plaintiff's activities months after his termination from PartsSource, not while he was working there.

In the alternative, the evidence does not show by clear and convincing evidence that Plaintiff willfully presented false testimony to the court, should the court be persuaded by Defendant's arguments.  Plaintiff did not hide monies paid to him after he was terminated from PartsSource.  In addition, Plaintiff testified about certain things he could recall at that time, and the Defendants are seeking for the court to determine his failure to recall an e-mail as untruthful, to the point of dismissing the action.  A sanction of dismissal would be far too severe under the circumstances, where sanctions are unwarranted.

A.    Nature and Extent of Harvey's Dealings with Lawrence Wotjala

Defendants allege that through their own investigation they discovered that Harvey had engaged in "suspicious email" communication to Wotjala (See Defendants' Brief in Support of Sanctions, pg. 3).  This statement is misleading in itself as the document Defendant is alluding to was produced by Defendants in discovery (See Exhibit A).  The fact that Mr. Wojtala, a builder, asked Plaintiff about privacy issues does not mean he and the Plaintiff engaged in any business transactions involving PartsSource.  It is a giant leap that Defendant is making to connect dots that simply do not exist.

Further, Defendants try to re-characterize the money that Plaintiff received as much more than a referral money.  However, nothing in the testimony from Plaintiff or the attached Affidavit from Wojtala contradict that the money Plaintiff received from Wojtala after his termination, was

24

more than referral money (See Affidavit of Wotjala).  In fact, Defendants did not seek clarification from Plaintiff as to the meaning of referral, would could have assisted in Defendant's understanding of the case.

Defendants were clearly aware that Wotjala was a supplier to PartsSource while Harvey was employed there.  In fact, PartsSource continued to do business with Sequoia even after Harvey's termination (See Exhibits B and C).

C.    Email Address Harvey Has Used

In response to a question posed to Harvey as to the email addresses he has used, Harvey gave several addresses.  The question was posed:

> Q.    Okay.  Any others?
>
> A.    That's all I can remember at this time.
>
> Q.    Ferra512tr stand for?
>
> A.    Ferrari 512 Testarossa.
>
> Q.    Are there any other email addresses that you can remember other than jahrvey@mypartssource.com, jharvey@partssource.com, jibbyman@hotmail.com and ferra512tr@aol.com?
>
> A.    Since 2004, that's all I can recall right now [Harvey Dep., 51:16-52:4, emphasis added].

Clearly, Harvey paraphrased his answers by indicating that it is all he can remember or recall at that time.  Wotjala created emails for Plaintiff to give him an air of professionality. (See Wotjala Affidavit attached as Exhibit "D").  The documents produced by Defendants indicate minimal use of the alleged emails in question.  Plaintiff, like any other party, has the right to revise and supplement answers to discovery questions.  The information that Defendants are relying have been recently obtained by the Defendants pursuant to subpoenas served, and Plaintiff did not have an

25

opportunity to further supplement his discovery based on the receiving these e-mails.  Certainly, it is his right when his memory is refreshed.  The fact that Plaintiff did not yet supplement his answers, when he only recently received copies of the e-mails do not warrant Defendant's arguments that the Plaintiff was untruthful and committing fraud against the court, and do not lend to a sanctions by the court, let alone dismissal of the action.

D.    Checks

Defendants also argue that Harvey's testimony was false about checks and indicated Harvey endorsed several checks.  The Defendants are incorrect.  The checks indicate that one (1) was endorsed by Harvey dated December 20, 2009.  Mr. Wotjala deposited all the others in Harvey's bank account.  The backs of the checks state "for deposit only."  This is self-explanatory.  As indicated above, Plaintiff voluntarily divulged the fact that he received the checks, and made no attempt to conceal them from the court.

With all the inconsistencies and presumptions in Defendants' evidence, it is clear that the Plaintiff's conduct was not willful, done in bad faith, nor did he have any fault, by clear and convincing evidence, or otherwise.  As a result, sanctions are not warranted under this provision, especially the sanction of dismissal.

**2.    Whether The Adversary was Prejudiced by the Party's Conduct**

Plaintiff did not offer false testimony to the court.  However, assuming arguendo that Plaintiff's testimony was false, it was not willful, in bad faith or egregious.  More important, the Defendants were not prejudiced by it for the following reasons:

a.    The case is in the early stages of discovery.  The Plaintiff has an obligation to revise and supplement his answer to depositions, as well as Interrogatories.

26

b.     Contrary to Defendant's assertions at the Status Conference, the discovery the Defendants have engaged in is not a result of Plaintiff's false testimony, but an effort on Defendants' behalf to uncover enough to allow the Defendants to file a counterclaim.  The Defendant's wish to file a counterclaim has been referenced at the Case Management Conference and at the January Status Conference; yet the Defendants have still not sought leave from the court.  Therefore, the Defendants have not been prejudiced through this discovery process, as this is information they would have sought anyway.

c.     The Defendants have failed to attempt to clarify or rectify any perceived inconsistencies in Plaintiff's statements prior to bringing the issue up in open court, without filing a motion or any opportunity for the parties to reflect.  If the need to hold a hearing on this matter prejudiced the Defendant in any way, it was a result of the manner in which Defendant chose to proceed with its presumptions and suppositions.

d.     Although depositions of non-parties have been scheduled, the parties have not proceeded past the initial depositions of the partiea, and therefore, Defendant will not be adversely affected by the need to conduct depositions to clarify the record, as the depositions were already eluded to by the parties prior to Defendants receiving the e-mails from Mediserve.  In fact, Defendants' counsel had already decided to spend the money to travel out of state to depose people in the States of  Washington, Florida, North Carolina, and Wisconsin.  Certainly, with Defendants' pre-arranged plans to conduct discovery by way of such an extensive and expensive travel

27

schedule, Defendants would not be prejudiced by the court's failure to impose sanctions or dismiss the case.

**3.    The Defendants have been in possession of information about Larry Wotjala and Other Vendors in this Case.**

Defendant, PartsSource properly sourced Sequoia, as Gayla Hullinger, a sourcing specialist at PartsSource, not the Plaintiff, sourced Sequoia.  (See PartsSource documentation indicating Gayla Hullinger's name, attached as "Exhibit E,"  and incorporated herein as if fully rewritten).  Chuck Giammo of Mediserve was also a vendor of PartsSource.  Further, PartsSource had "scrubbed" Harvey's computer.  In the process, they discovered pornography and many other emails that have been produced in this case.  PartsSource has served several subpoenas as a result of information that was provided by Plaintiff in his deposition.

**B.    CONCLUSION**

WHEREFORE, the Plaintiff requests the court dismiss the Defendant's Motion for Sanctions and find that sanctions were not warranted in this case, especially in light of the fact that the  Defendants have failed to exhaust the procedures under Fed. Civ. R. P. 37, which could have avoided this entire proceeding.

Respectfully submitted,
***Law Offices of Lynda Harvey Williams & Associates, L.L.C.***

\s\ Lynda Harvey Williams
LYNDA HARVEY WILLIAMS #0043747
KANI HARVEY HIGHTOWER #0083764
Attorneys for Plaintiff
106 S. Main St., Suite 2300
Akron, Ohio 44308
330-376-2272 - phone
330-376-5618 - fax
Lhw44308@yahoo.com

28

CRITCHFIELD, CRITCHFIELD & JOHNSTON, LTD.

\s\ Susan E. Baker
SUSAN E. BAKER ##0059569
Attorney for Plaintiff
4996 Foote Road
Medina, Ohio 44256
Phone: (330) 723-6404
Facsimile: (330) 721-7644
Email: baker@ccj.com

### CERTIFICATE OF SERVICE

A copy of the foregoing Reply to Defendants' Motion for Sanctions was filed electronically on the 16th day of March, 2011 in accordance with the Court's Electronic Filing Guidelines.  The Motion will be sent to all parties by operation of the Court's electronic filing system.

\s\ Lynda Harvey Williams
LYNDA HARVEY WILLIAMS #0043747
KANI HARVEY HIGHTOWER #0083764
SUSAN E. BAKER ##0059569
Attorneys for Plaintiff